UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL CASE NO. 16-86-WOB-CJS

SANDRA DEE MARCUM                                                                    PLAINTIFF


v.                                      REPORT AND RECOMMENDATION


CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                                      DEFENDANT


* * * * * * * * * * * *

Plaintiff Sandra Dee Marcum brings this action under 42 U.S.C. §§ 405(g), challenging

Defendant Commissioner's final decision denying her application for benefits under Title II and Title

XVI of the Social Security Act.  (R. 1).  This matter has been referred to the undersigned for

preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether

the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not

entitled to benefits.  After a thorough review of the administrative record, for the reasons explained

below it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 12) be **denied**,

and the Commissioner's Motion for Summary Judgment (R. 13) be **granted.**

I.       STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the

reviewing court are whether the ALJ applied the correct legal standards and whether the decision is

supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406.  "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached.  *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits.  42 U.S.C. §§ 423(a)(1), 1381 *et seq*.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity."  *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04.  "A 'severe

2

impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, if the impairment does not meet or equal a listed impairment, the claimant must show her impairment prevents her from doing her past relevant work. *Id*.  Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (citing *Abbott*, 905 F.2d at 923).  Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 548 (6th Cir. 2004)).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on December 6, 2012, when she was 49 years old. (Administrative Record (A.R.) 292, 296).  Plaintiff completed high school and a program to become a dog groomer.  (*Id.* at 328).  Plaintiff has previous work experience as a custodian and an auto detailer.  (*Id.* at 126-27, 329).  On her application, Plaintiff asserted the following conditions limit her ability to work: chronic obstructive pulmonary disease ("COPD"), social anxiety, PTSD, arthritis, depression, and anxiety.  (*Id.* at 327).

Plaintiff testified at the hearing that she was receiving treatment at a suboxone clinic for substance abuse, and she receives treatment for anxiety twice a month at Comprehensive Care

3

Center.  (A.R. 129-34).  She also testified to having pain in her left knee and lower back that radiates down both legs and having interstitial cystitis.  (R. 135-36).  She testified that she was diagnosed with chronic bronchitis when she was 11 years old and that when she got older, she was diagnosed with bronchiectasis.  More recently she began seeing Dr. Griffith for her breathing problems.  (*Id.* at 138).  She testified that she uses an inhaler twice a day and that Dr. Griffith recently ordered nebulizer treatments for her to use four times a day.  (*Id.*).

On May 23, 2013, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income.  (*Id.* at 292-99, 334).  These claims were denied initially and again upon reconsideration.  (*Id.* at 162-223).  At Plaintiff's request, a hearing was held in front of Administrative Law Judge (ALJ) Don C. Paris on January 23, 2015.  (*Id.* at 119-61).  Plaintiff appeared and testified at the hearing.  (*Id.*).  The ALJ also heard testimony from an impartial vocational expert (VE).  (*Id.* at 154-60).  After receiving testimony and reviewing the record, the ALJ issued a written decision on February 5, 2015, finding Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 100-111).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled.  (*Id.*).  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since December 6, 2012–the alleged onset date of her disability.[1]  (A.R. 102).  At step two, the ALJ determined that Plaintiff had the following severe impairments: affective disorder, personality disorder, substance addiction, and interstitial cystitis.

_____

[1]The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.  (A.R. 18).

4

(*Id.*).  The ALJ found Plaintiff's osteoarthritis, degenerative disc disease, and chronic obstructive airway disease were nonsevere impairments.  (*Id.*).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination.  He found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listing of Impairments under the applicable Federal Regulation, specifically referencing his consideration of Listings 3.02, 6.02, 12.04, 12.08 and 12.09.  (*Id.* at 23-24).  At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work, specifically finding:

> She can lift and or carry 20 pounds occasionally and ten pounds frequently, stand or walk six hours out of an eight-hour workday and sit six hours out of an eight-hour workday.  The claimant can frequently climb ramps and stairs and occasionally climb ladders or ropes.  She can frequently stoop, kneel, crouch, and crawl.  The claimant also suffers with mental impairments, but is able to (a) understand and remember simple and detailed instructions and procedures, (b) sustain attention, concentration, and pace for simple task completion with a regular two hour block of time, (c) interact with peers and supervisors for task completion, (d) interact on an occasional basis with the public, and (e) adapt adequately to work demands and situational changes when given reasonable support.

 (*Id.* at 106).  In reaching this RFC, the ALJ considered claimant's testimony, answers of Plaintiff's sister and mother to a third-party questionnaire, the documentary evidence before him, and the medical opinion evidence.  (*Id.* at 106-09, 345-53; 368-76).  After consideration of the complete record, the ALJ imposed limitations in the RFC that he found supported by the evidence.  (*Id.*).

At the hearing, the ALJ heard testimony from an impartial VE who stated that, based on the RFC provided by the ALJ, Plaintiff could not perform her past relevant work.  (*Id.* at 109, 156).  The VE testified, however, that given an individual of Plaintiff's age, education, work experience, and RFC cited above, there are jobs that exist in significant numbers in the national economy that such an individual can perform.  (*Id.*).  The VE testified that representative occupations include: light

commercial cleaner, mailroom clerk/sorter and general clerical worker/office helper.  (*Id.* at 156-57).[2]  The ALJ adopted the VE's opinions, and concluded that Plaintiff was not "disabled" for social security purposes.  (*Id*. at 109-110).

On February 20, 2015, Plaintiff appealed the ALJ's decision to the Social Security Appeals Council.  (A.R. 1-7, 93-96).  On March 17, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's February 5, 2015, decision denying Plaintiff benefits the final decision of the Commissioner.[3]  (*Id.* at 1-7).   On March 17, 2016, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence and that the ALJ failed to apply the proper legal standards.  (R. 1).

Plaintiff has filed a Motion for Summary Judgment, arguing that the ALJ erred by failing to: 1) find Plaintiff's COPD to be a severe impairment and 2) follow the regulations when evaluating the opinion evidence.  (R. 12, at 5, 6-15).  Each of these arguments is discussed below.

## III.   ANALYSIS

### A.   The ALJ did not commit reversible error at step two.

Plaintiff argues that the ALJ erred in not finding Plaintiff's COPD/bronchitis to be a severe impairment at step two of the disability evaluation process.  (R. 12, at 6-12).  However, as discussed

---

[2]Upon questioning by Plaintiff's counsel, the VE testified that these jobs are not eliminated by a need for an additional break each day for purposes of having a nebulizer treatment.  (*Id.* at 158-59).  The VE also testified that adding a requirement to alternate sit and stand positions every 30 minutes would not significantly erode the clerical positions.  Further, considering a person who can lift no more than 10 pounds, can sit and stand six hours out of eight hours, and would need to alternate positions every 30 minutes, the VE testified that such a person would require sedentary work and these requirements would reduce the clerical positions by fifty percent.

[3]In the March 17, 2016, Notice of Appeals Council Action, the Council explained it had previously denied Plaintiff's request for review, but was setting aside that earlier decision to consider additional information.

below, any step two error was harmless since the ALJ considered Plaintiff's pulmonary impairments in all subsequent steps.[4]

The second step in the disability evaluation process requires the ALJ to consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii); SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities," which are defined as "those abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 404.1521(b), 416.920(c), 416.921(b).  Basic work activities include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*.  Additionally, the claimant's impairments must have lasted or be expected to last for a continuous twelve month period.  20 C.F.R. §§ 404.1520, 416.920.

Because the Sixth Circuit has interpreted "the step two severity regulation as a 'de minimis hurdle' in the disability determination process" meant to screen out totally frivolous claims, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). "[A]n impairment can be considered not severe only if it is a slight abnormality

---

[4]While the ALJ found other impairments were also not severe, Plaintiff challenges only the ALJ's finding that her COPD was not a severe impairment.

that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

Moreover, as long as the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process and the ALJ continues to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). For this reason, the Sixth Circuit has consistently held that an ALJ does not commit reversible error when he decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his or her analysis. *See Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. 2008) (finding failure to include some impairments as "severe" was "legally irrelevant" where some severe impairments were found and, therefore, claimant cleared step two and the ALJ would, as required, consider all severe and non-severe impairments later in the analysis) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987)); *McGlothin v. Comm'r of Soc. Sec.,* 299 F. App'x 516, 522 (6th Cir. 2008) (same). As long as "an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two 'does not constitute reversible error.'" *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting *Maziarz*, 837 F.2d at 244).

Here, at step two the ALJ found Plaintiff's chronic obstructive airway disease was not a severe impairment, stating:

> The claimant is a smoker with a two pack a day habit. (Exhibit 10F, pp. 10, 21; Exhibit 12F, p. 1). She has been advised to quit smoking (Exhibit 10F, p. 21) and

8

has indicated that she has done so (Exhibit 2F, p. 4), only to thereafter admit that she had started back again. (Exhibit 10F, p. 1). The claimant testified on January 23, 2015 that she quit smoking a couple of months before the hearing, but her treatment records indicate that the claimant admitted during a January 9, 2015, examination that she was still smoking. (Exhibit 12F, p. 1). Historically, she has had a number [of] breathing problems including chronic bronchitis (Exhibit 1F, pp. 3, 40; Exhibit 2F, pp. 14, 24, 45; Exhibit 10F, pp. 1, 2, 5), pneumonia (Exhibit 1F, pp. 86, 89; Exhibit 2F, p. 32; Exhibit 10F, p. 24), and upper respiratory infections. (Exhibit 2F, pp. 3, 49). With such history, the claimant has carried the diagnosis of chronic obstructive pulmonary artery disease. (Exhibit 2F, pp. 4, 12, 30, 42, 49; Exhibit 6F, pp. 3, 4, 7, 8, 11; Exhibit 10F, pp. 1, 2, 19, 21, 22). Yet historically, the pulmonary function studies in her treatment records showed no more than a mild restriction. (Exhibit 1F, pp. 83, 84, 128, 148).

On January 9, 2015, the claimant underwent a pulmonary consultation with Dr. Mark Griffith at Lexington Clinic. (Exhibit 12F, p. 1). Her chest x-ray was unremarkable and the claimant's lung fields were clear. (Exhibit 12F, p. 2). The claimant was found to have good air movement, but scattered bilateral inspiratory ronchi. (Exhibit 12F, p. 1). A CT of the claimant's chest showed ligular and left lower lobe bronchial wall thickening and cylindrical bronchiectasis. (Exhibit 12F, p. 12). The spirometry suggested moderate to severe obstruction. (Exhibit 12F, p. 2). Dr. Griffith diagnosed the claimant with severe chronic obstructive airway disease. (Exhibit 12F, p. 3). He indicated that there might additionally be a component of chronic obstructive pulmonary disease due to the claimant's smoking habit. (Exhibit 12F, p. 3). The undersigned Administrative Law Judge relies on this evidence to find that the claimant has overstated the evidence regarding her breathing problems which are clearly exacerbated by her continued smoking. Although Dr. Griffith diagnosed the claimant with chronic obstructive airway disease, there is insufficient evidence to establish that this diagnosis meets the durational requirement of a severe impairment. (20 CFR 404.1505 and 416.905). *See* pulmonary function studies at Exhibit 1F, pp. 83, 84, 128, 148.

(A.R. 103-04).

Plaintiff argues the ALJ erred in finding her COPD/bronchitis did not meet the durational requirement because he ignored the medical evidence that demonstrated Plaintiff suffered from a long standing breathing impairment. (R. 12, at 6-12). In support of her argument that her breathing problems met the durational requirement for a severe impairment, Plaintiff references several

medical records from 2010 to 2015 that she argues document her breathing problems have gotten progressively worse over an extended period of time.[5]  (*Id.* at 8-10).

Even assuming arguendo that the ALJ should have found Plaintiff's pulmonary impairment to be severe, because he did find that she had some severe impairments, the error is not reversible as long as the ALJ considered the pulmonary impairment in his analysis of the remaining steps.  (*See* A.R. 102).  Review of the ALJ's decision reveals that he did.

Specifically, at step 3, the ALJ considered whether Plaintiff's pulmonary impairment met Listing 3.02, stating:

> Although the undersigned found the claimant's pulmonary problems to be nonsevere, Listing 3.02 was additionally considered inasmuch as it was argued during the January 23, 2015 hearing that the claimant's most recent treatment records proved that the Listing had been met.  Such Listing requires in part a $FEV_1$ of 1.05 or less for a person of the claimant's height.  The pulmonary function study performed on January 23, 2015 documented a $FEV_1$ of 1.07 (Exhibit 12 F, pp. 5, 8, 10), thus the criteria of the Listing are not met.

(A.R. 104).  Thus, the ALJ considered Plaintiff's pulmonary impairment at step 3.[6]

---

[5]In her Motion, Plaintiff references two exhibits that post-date the ALJ's February 5, 2015, decision. (R. 12, at 10).  As the Appeals Council explained, the medical records post-dating the ALJ's decision do not relate to the time period at issue–the alleged onset date through the date of the ALJ's decision.  (*See* A.R. 2).  Thus, these later records are not relevant to the inquiry currently before the Court as to whether Plaintiff was disabled on or before the ALJ's February 5, 2015, decision.  (*Id.*); *see Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1986) (records related to a claimant's condition after the ALJ's decision are irrelevant to whether he was disabled on or before the date of the decision).  However, to the extent Plaintiff asserts these records support a finding of disability during the later time period, she may initiate a new claim for benefits for the time period after February 5, 2015. (*Id.*).

[6]Plaintiff argues that her 2015 breathing study supports a finding that her COPD is a severe impairment because it establishes that she met the criteria for Listing 3.02.  However, in making this statement, Plaintiff references the lower of the two test results, 1.0, instead of the higher pre-bronchodilator value of 1.07.  In determining if Listing 3.02 is met, the highest value of the $FEV_1$ is to be used.  *See McKee v. Comm'r of Soc. Sec.*, No. 2:14-cv-609, 2015 WL 1299562, at *5 (S.D. Ohio Mar. 23, 2015) (collecting cases) *adopted by* 2015 WL 1637470 (S.D. Ohio Apr. 13, 2016); *see also* 20 C.F.R. part 404, subpart P, appendix 1, § 3.00(E) ("the highest values of the $FEV_1$ and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment.").  Thus, the ALJ correctly determined the 2015 test result did not meet Listing 3.02 because the pre-bronchodilator value of 1.07 exceeded the level required to meet the criteria of Listing 3.02, which for a person of Plaintiff's height is 1.05 or less.

In addition, in determining Plaintiff's RFC the ALJ stated he "considered all [Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 418.929 and SSRs 96-4p and 96-7p." (A.R. 106-07). In his discussion on how he reached his RFC determination, the ALJ specifically referenced that Plaintiff was relying on obstructive pulmonary disease, as well as other conditions, to support her disability claim. The ALJ also noted Plaintiff testified she can walk only about 50 to 75 feet before she gets out of breath and can stand for no longer than four to five minutes. (*Id.*). These statements evidence that the ALJ considered her pulmonary disease in reaching the RFC.

After reaching the RFC determination, the ALJ utilized the stated RFC to find Plaintiff could not perform her past work, but could perform other jobs that exist in the national economy. Thus, because the ALJ considered Plaintiff's pulmonary impairments at all steps of the analysis, any step two error does not constitute reversible error. *See Fisk*, 253 F. App'x at 584 (concluding no reversible error occurred where the ALJ considered plaintiff's non-severe impairments in the remaining steps of the disability determination, accounting for non-severe impairments while making an RFC determination).

### B.   The ALJ did not err in weighing the opinion evidence.

Plaintiff argues the ALJ erred in disregarding the opinions of her treating providers Drs. Shah, McClain and Griffith. Plaintiff does not, however, provide record citations where any of her treating physicians provided a "medical opinion."[7] Instead, Plaintiff points to the fact that all three

---

[7]The Scheduling Order entered in this case on May 18, 2016, informed the parties that they must provide the Court with specific citations to the administrative record to support their arguments. (*See* R. 11, at 3-4 ¶ 3(c)).

treating providers diagnosed her with COPD and argues the ALJ erred in not considering all treating and examining source opinions.   Review of the ALJ's decision, however, reveals that the ALJ recognized Plaintiff carried a diagnosis of COPD, but did not find it caused functional limitations above those stated in the RFC.

The regulations provide the following definition of "medical opinions":

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. §§ 404.1527(a), 416.927(a); *see also Garrett v. Comm'r of Soc. Sec.*, No. 13-212-WOB-CJS, 2015 WL 351816, at *5 (E.D. Ky. Jan. 23, 2015) (finding the treating source rule was not triggered because the treating physician's treatment records did not provide an opinion as to plaintiff's functional limitations and were not medical "opinions" that had to be weighed); *Bruce v. Comm'r of Soc. Sec.*, No. 10-10426, 2011 WL 833792, at *3 (E.D. Mich. Mar. 4, 2011) ("the ALJ had no obligation to discuss the weight given because the treating physicians offered diagnoses, not opinions about the severity of Plaintiff's impairments or her limitations"); *Pedigo v. Astrue*, No. 1:09-cv-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) *adopted by* No. 2010 WL 1408427 (E.D. Tenn. Apr. 2, 2010) ("Where treatment records contain only the subjective complaint of the claimant and the diagnosis of a treating physician unaccompanied by any objectively-supported medical opinion as to the limitations imposed by the condition, the ALJ may properly discount them.").

A review of the medical records before the ALJ did not reveal a medical opinion by a treating physician of any limitations imposed on Plaintiff by her pulmonary impairment.  Instead, the treatment records of Drs. Shah, McClain and Griffith contain descriptions of their findings on

12

examination and provide an assessment and a proposed plan for treatment. The records do not provide a medical opinion on the effect Plaintiff's pulmonary impairment had on her ability to function. "A mere diagnosis does not establish a severe impairment or the existence of a functional limitation." *Bruce*, 2011 WL 833792, at *3.

Specifically, Dr. Shah's medical records reveals that from February 8, 2011, through April 24, 2014, Plaintiff regularly sought treatment from him for a variety of ailments, including cough and pulmonary problems. (A.R. 601-56, 738-48). While his records carry a diagnosis in Plaintiff's medical history of COPD and he often noted a pulmonary condition in his assessment, the records do not contain any opinions as to any functional limitations caused by her pulmonary condition.[8]

Similarly, Dr. McClain's records also do not provide a medical opinion that would support a more restrictive RFC than was determined by the ALJ. The records establish that the Plaintiff began treating with Dr. McClain in September 2014, and Dr. McClain documented Plaintiff's exacerbation of symptoms of COPD/bronchitis. (A.R. 790-814). Dr. McClain also noted Plaintiff began smoking again, 1 1/2 to 2 packs a day, and recommended cessation. Dr. McClain also "restarted" Plaintiff on inhalers. (*Id.*). While these records indicate Dr. McClain was treating Plaintiff for a current exacerbation of pulmonary symptoms and restarted her on inhalers, she did not provide an opinion on the severity of Plaintiff's pulmonary impairment or any functional limitations

---

[8]Notably, while Plaintiff argues in her briefing that the ALJ should have included environmental limitations in the RFC, she does not point to any statement by her physicians that such restrictions were necessary. In fact, Dr. Shah repeatedly noted in his medical records that Plaintiff performed "janitorial" work, but he did not impose any restrictions. (A.R. 601-56, 738-48). Further, review of the record reveals that despite the encouragement of Plaintiff's physicians to stop smoking, she continued to do so. In *Mullins v. Secretary of Health and Human Services*, 836 F.2d 980 (6th Cir. 1987), the Sixth Circuit found substantial evidence supported the ALJ's decision that plaintiff's pulmonary condition did not require environmental limitations where no treating physician had imposed environmental restrictions on him and plaintiff continued his heavy smoking habit. *Id.* at 985.

caused thereby.  After three months of treatment, Dr. McClain, upon Plaintiff's request, referred her to Dr. Griffith, a pulmonologist.

As to Dr. Griffith, the record before the ALJ evidenced Plaintiff saw him for evaluation on January 9, 2015.[9]  (A.R. 831-58).  Dr. Griffith noted that Plaintiff's chronic cough, dyspnea and wheezing had improved back to baseline and Plaintiff's use of inhalers had somewhat improved her respiratory symptoms.  (A.R. 831).  Dr. Griffith noted that Plaintiff was in no respiratory distress, had normal tactile fremitus, scattered bilateral inspiratory ronchi, no signs of consolidation, normal percussion and good air movement.  (*Id*. at 832).  He also found the imaging studies demonstrated her lung fields were clear with complete resolution of the left basilar infiltrate that had been noted on a November 11, 2014, chest x-ray.  Dr. Griffith reported that Plaintiff's spirometry test suggested moderate to severe obstruction with a $FEV_1$ of 1.07, and in his assessment he diagnosed her with severe chronic obstructive airways disease and noted she may have a component of COPD due to emphysema/chronic bronchitis from smoking.  He noted Plaintiff smoked 2 packs of cigarettes a day and stressed the importance of smoking cessation.  He also continued her on Symbicort and Albuterol inhalers and added a Spiriva inhaler to her regimen.  While Dr. Griffith noted Plaintiff's complaints of the limiting effects of her breathing impairments, Dr. Griffith did not opine on any functional limitations.

Review of the ALJ's decision in its entirety reveals that the ALJ, citing to medical evidence that included the medical records of Drs. Shah, McClain and Griffith, acknowledged Plaintiff has

---

[9]While additional medical records from Dr. Griffith were later submitted to the Appeals Council, the Sixth Circuit has held that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)).

a history of breathing problems, including chronic bronchitis and pneumonia, and recognized she carried the diagnosis of COPD. However, the mere diagnosis of a condition does not establish a severe impairment or the existence of a functional limitation. *See Despins v. Comm'r of Soc. Sec.,* 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of those impairments, however, does not establish that [plaintiff] was significantly limited from performing basic work activities for a continuous period of time."); *Higgs v. Bowen,* 880 F.2d at 863 ("[M]ere diagnosis of arthritis . . . says nothing about the severity of the condition."); *Bruce,* 2011 WL 833792, at *3 (a diagnosis does not establish functional limitations). Plaintiff does not point to any specific medical opinion evidence by her treating physicians that she asserts the ALJ failed to weigh, let alone one that provides any functional limitations caused by her breathing/pulmonary impairment.[10]

Noting a lack of any opinion evidence suggesting greater limitations, the ALJ credited the opinion of Dr. Reed, the state agency physician, who provided a records review and an opinion of Plaintiff's functional limitations.[11] *See Hammond v. Comm'r of Soc. Sec*, No. 15-cv-12959, 2016 WL 8115398, at *4 (E.D. Mich. Aug. 16, 2016) (noting that, contrary to the plaintiff's urging, the ALJ was precluded from extrapolating from medical records to reach an RFC and relied on the only

---

[10]While Plaintiff, in arguing the ALJ erred at step two, points to medical records she asserts demonstrate the permanent and long standing nature of her COPD, she does not point to any opinion evidence that her breathing impairment limits her functional abilities to a greater extent than set forth by the ALJ's RFC determination.

[11]Plaintiff's citation to *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987) and *Rogers v. Commissioner of Social Security*, 486 F.3d 234 (6th Cir. 2007) are not on point. While Plaintiff argues her case is similar to *Shelman* because the plaintiff there had a breathing impairment and the ALJ failed to give due deference to the treating physician's opinion, Plaintiff here fails to point to any "medical opinion" provided by her treating physicians that triggered the treating physician rule. *Rogers* is also distinguishable because there the treating physicians assessed the plaintiff's limitations and provided their opinions for consideration by the ALJ. Here, Plaintiff's treating providers did not provide an opinion as to Plaintiff's functional limitations.

opinion evidence of record regarding the plaintiff's functional limitations).  In addition, the ALJ explained he found Plaintiff's testimony regarding her daily activities, which included cooking, light housework, shopping, caring for her ex-husband, and looking after her two dogs, also supported a finding that she could perform a limited range of light, exertional work.  Thus, the record evidences that the ALJ made his RFC finding after reviewing the medical record, reviewing Plaintiff's testimony of her daily activities, and in reliance on Dr. Reed's medical opinion of Plaintiff's functional limitations.  Accordingly, the Plaintiff has failed to demonstrate that the ALJ erred in his consideration of the opinion evidence.

## IV.    CONCLUSION AND RECOMMENDATION

As explained above, Plaintiff's arguments lack merit and the ALJ's decision is supported by substantial evidence.  Accordingly, **IT IS RECOMMENDED** that:

1.      The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2.      Plaintiff's Motion for Summary Judgment (R. 12) be **denied**;

3.      Defendant's Motion for Summary Judgment (R. 13) be **granted**; and,

4.      Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Signed this 28th day of February, 2017.



**Signed By:**

***Candace J. Smith***

**United States Magistrate Judge**

J:\DATA\social security\16-86 Marcum R&R final.wpd